```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
ACCESS BUSINESS GROUP                                         :
INTERNATIONAL, LLC, et al.,                                   :
                                                              :        21 Civ. 10779
             Plaintiffs / Counterclaim Defendants,            :
                                                              :        OPINION AND ORDER
                      -against-                               :
                                                              :
REFRESCO BEVERAGES US INC.,                                   :
                                                              :
             Defendant / Counterclaim Plaintiff.              :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Defendant / Counterclaim Plaintiff Refresco Beverages US Inc. ("Refresco") asserts two counterclaims against Plaintiffs / Counterclaim Defendants Access Business Group International, LLC and Access Business Group LLC (together, "Access"), the first for breach of contract and the second for indemnification. Access moves to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Access's motion is granted.

I.  BACKGROUND

The following facts are taken from the Answer, Affirmative Defenses and Counterclaims (the "Counterclaims") and documents incorporated by reference in it. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). They are assumed to be true for purposes of this motion. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

Refresco is a part of the Refresco group, the largest independent bottler for retailers and branded beverage companies in Europe and North America. Access is part of the Amway group, which manufactures and distributes nutrition, beauty, personal care and home products.

On January 14, 2020, Access and Refresco entered into a written purchase agreement in which Refresco agreed to produce and bottle drink products for Access (the "Agreement"). The Agreement contains the following provision:

> **2(a) General.** During the term of this Agreement, Access shall order and purchase Products from Seller and Seller shall manufacture and sell Products to Access, all in accordance with the terms of this Agreement. Except in regards to Seller's minimum order quantity, Access is under no obligation to order any minimum quantity of Products or to use Seller as its exclusive supplier for the Products.

The next paragraph states that "Access shall only be obligated to purchase Products upon issuance of a purchase order . . . . The minimum order quantity of Products will be 25,000 cases . . . , a total of 300,000 cans per Purchase Order." Upon accepting a purchase order, Refresco would manufacture, deliver and sell the canned drink to Access according to formulas and packaging specifications provided by Access. The Agreement provides that the initial term will commence January 14, 2020, and "shall continue" for three years thereafter unless either party terminates the Agreement pursuant to the provisions of Section 12.

In July, 2020, Access provided Refresco with formulations of various energy drinks for Refresco to produce and bottle (the "Designated Products"). Access requested that these drinks be packaged in aluminum cans lined with coating known as BPA-NI. Because those formulations had not been tested for use in BPA-NI cans, Refresco required Access to clarify that (1) Access assumed sole responsibility for evaluating the fitness of its selected BPA-NI cans for use with Access's drink formulations, including any related testing; and that (2) Refresco assumed no liability for any damages due to corrosion problems caused directly by the formulations of the products ordered, including leaking cans and packaging. On August 5, 2020, the parties executed a letter agreement confirming this clarification (the "First Letter"), effective until corrosion testing had been completed.

In September, 2020, Refresco began producing the Designated Products. Because Refresco was concerned that Access had not been testing their formulations for corrosion, Refresco and Access executed a second amendment to the Agreement on January 18, 2021 (the "Second Letter"). In the Second Letter, the parties (i) affirmed portions of the agreements in the First Letter, (ii) confirmed that "Refresco shall have no liability whatsoever for any damages due to use of the Formulas in any iterations of the Designated Products," (iii) deleted the provision from the First Letter that would have allowed certain of its terms to be no longer in effect if and only after corrosion testing showed that there were not corrosion problems and (iv) added an express agreement that Access would "indemnify Refresco from claims or damages due to corrosion problems with the Designated Products." Refresco resumed production and shipped the Designated Products to Access.

In July 2021, Access reported that some of the Designated Products were leaking. The formulations of the Designated Products, as specified by Access, caused the aluminum cans to corrode. Since then, Access has not issued a purchase order to Refresco.

On December 16, 2021, Access filed this action against Refresco claiming that Refresco breached the Agreement by providing nonconforming products, and for refusing to reimburse Access for those nonconforming products. Refresco asserts two counterclaims, alleging that (1) Access breached the contract and its covenant of good faith and fair dealing by terminating, *de facto*, the Agreement without clear, justifiable and proper notice and (2) Access agreed to indemnify and reimburse Refresco for all claims and damages due to corrosion problems with the Designated Products.

Access argues that both claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as (1) the Agreement's own terms state that Access is

not required to make minimum purchases and (2) the indemnification claim is barred because it does not expressly apply to claims between the contracting parties.

## II.   STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which their claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (cleaned up).

New York law governs this dispute because the parties' submissions assume that it does. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law[.]" (internal quotation marks omitted)).

## III. DISCUSSION

### A. Breach of Contract

The Counterclaims fail to state a viable claim for breach of contract. "The essential elements of a breach of contract cause of action are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Maspeth Fed. Sav. & Loan Ass'n v. Yeshiva Kollel Tifereth Elizer*, 153 N.Y.S.3d 580, 581 (2d Dep't 2021).

"[W]hen parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms." *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura Credit & Capital, Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017) (internal quotation marks omitted). "Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous." *Banos v. Rhea*, 33 N.E.3d 471, 475 (N.Y. 2015). "A contract is unambiguous if on its face [it] is reasonably susceptible of only one meaning . . . . Conversely, [a] contract is ambiguous if the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *LDIR, LLC v. DB Structured Prods., Inc.*, 99 N.Y.S.3d 327, 330-31 (1st Dep't 2019) (cleaned up).

The Counterclaims allege that Access breached the Agreement by *de facto* terminating the Agreement without proper notice, and that this occurred when Access ceased to purchase additional products from Refresco beginning in June 2021. This argument fails because the express terms of the Agreement state that Access is under no obligation to purchase any products from Refresco. Section 2(a) of the Agreement states:

"Except in regards to [Refresco's] minimum order quantity, Access is under no obligation to order any minimum quantity of Products or to use [Refresco] as its exclusive supplier for the Products."  The Agreement clarifies that "minimum order quantity" refers to the minimum number per Purchase Order, should there be a Purchase Order.  Section 2(b) states:  "Access shall only be obligated to purchase Products upon issuance of a purchase order . . . by Access to [Refresco]" and states the "minimum order quantity of Products . . . per Purchase Order."  Similarly, Section 2(h) requires Access to provide Refresco purchase order forecasts upon request, but emphasizes that "these forecasts are estimates only and shall not constitute a binding commitment for Access to purchase any given quantities of any Product . . . ."

By these unambiguous terms, Access has no obligation to purchase any products from Refresco while the Agreement is in effect.  The Agreement applies only when Access issues a purchase order, which triggers the parties' respective obligations.  If and when it does, Access must purchase "a minimum order quantity" of 25,000 cases, or 300,000 cans.  But the Agreement does not require Access to issue a purchase order in the first place.  Absent that obligation, there is no *de facto* termination and therefore no breach of Section 12's procedural requirements in the event of termination.

Refresco argues that this reading of the Agreement would impermissibly render Section 12 and the first sentence of Section 2(a) superfluous.  Access could, at any time during the three-year term, cease ordering more product from Refresco.  This would allow Access to, in effect, terminate the Agreement without having to provide notice or the opportunity to cure, as required by Section 12.  The argument is unpersuasive.  Refresco asks the Court to ignore the unambiguous language in Sections 2(a) and 2(b).

6

These sections make clear that Access is under no obligation to order any minimum quantity of products from Refresco. As the parties set down their agreement "in a clear, complete document, their writing should as a rule be enforced according to its terms." *Nomura*, 92 N.E.3d at 747.

In addition, or in the alternative, the breach of contract counterclaim alleges that Access breached the Agreement's implied covenant of good faith and fair dealing. "Under New York law, implicit in every contract is a covenant of good faith and fair dealing . . . which encompasses any promises that a reasonable promisee would understand to be included." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018) (citing *New York Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995)) (internal quotations omitted). This covenant requires parties to a contract to refrain from "do[ing] anything [that] has the effect of destroying or injuring the right of the other party to receive the fruits of the contract," or violating the party's "presumed intentions or reasonable expectations." *Id.* (internal quotation marks omitted). However, "[t]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (applying New York law). Here, as explained above, Access acted in accordance with Sections 2(a) and 2(b). The breach of contract counterclaim is therefore dismissed.

## B. Indemnification

In the Second Counterclaim, Refresco seeks indemnification from Access for all expenses Refresco incurred in responding to this action. This counterclaim is dismissed because

7

the parties' indemnification agreement does not reflect an "unmistakable intention" to cover claims by Access against Refresco, in addition to claims by third parties against Refresco.

"When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989); *accord Feng Xue v. Koenig*, No. 19 Civ. 7630, 2021 WL 1092503, at *7 (S.D.N.Y. Mar. 22, 2021) (construing New York law). Courts require "an 'unmistakable intention' to indemnify before . . . enforc[ing] such an obligation." *Heimbach v. Metro. Transp. Auth.*, 553 N.E.2d 242, 246 (N.Y. 1990); *accord Firemen's Ins. Co. of Washington, D.C. v. Story*, 858 F. App'x 20, 22 (2d Cir. 2021) (summary order) (construing New York law).

An indemnification clause that is "typical of those which contemplate reimbursement when the indemnitee is required to pay damages on a third-party claim" does not apply to "claims between the parties themselves." *Hooper*, 548 N.E.2d at 905; *accord Feng Xue*, 2021 WL 1092503, at *7. That is true when all of the subjects of the indemnification clause are "susceptible to third-party claims" and "[n]one are exclusively or unequivocally referable to claims between the parties themselves." *Hooper*, 548 N.E.2d at 905; *accord In re Bridge Constr. Servs. of Fla., Inc.*, No. 12 Civ. 3536, 2016 WL 4625687, at *3 (S.D.N.Y. Sept. 6, 2016) (construing New York law). "[T]he rule set forth in [*Hooper*] applies in those cases where the parties' intent is not evident from the plain language of the agreement . . . ." *Crossroads ABL LLC v. Canaras Cap. Mgmt., LLC*, 963 N.Y.S.2d 645, 646 (1st Dep't 2013); *accord BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 415 (S.D.N.Y. 2011) (Under New York law, "indemnification clauses are not construed to cover first-party claims unless the contract makes it 'unmistakably clear' that the parties intended so to provide. Unless the

indemnification clause refers 'exclusively or unequivocally' to claims between the indemnitor and indemnitee, the court 'must find the agreement to be lacking evidence of the required intent' to cover such claims." (citation omitted)).

The parties' indemnification agreement, as stated in the Second Letter, does not have the express, unequivocal language required to meet the strict standard of *Hooper*:

> [Access] agrees that Refresco is not liable for any damages, losses, costs, liabilities and expenses whatsoever (including court costs and reasonable attorneys' fees) to the extent due to the Formulas for the Designated Products causing corrosion problems, and **[Access] will indemnify Refresco from claims and damages due to corrosion problems with the Designated Products.** (emphasis added)

The provision makes no mention of intraparty claims, and the issue of "damages due to corrosion problems" is susceptible to third-party claims. The Agreement therefore lacks the necessary language to cover such claims.

Refresco argues that indemnification is warranted because "it is for a claim brought *against* the indemnitee, Refresco, by the indemnitor." The argument is unpersuasive and ignores clear New York law to the contrary. Refresco relies upon the "analogous context of insurance," casting the indemnitee as the insured and the indemnitor as the insurer. Refresco cites the rule that "where, as here, the insured (indemnitee) 'was cast in a defensive posture' by the insurer's (indemnitor's) act in bringing suit *against* its insured (indemnitee), the insurer's duty to defend and indemnify extends to the insured's costs of defending that suit, if the insured prevails." Refresco offers little explanation as to why this rule, specific to insurance agreements, should apply in this context. Accordingly, that principle is inapposite, and the indemnification claim is dismissed.

9

IV.     CONCLUSION

For the reasons stated above, the motion to dismiss the Counterclaims is **GRANTED** in full.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 34.

Dated: January 24, 2023
New York, New York

LORNA G. SCHOFIELD
**UNITED STATES DISTRICT JUDGE**